## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

ACQUEST HOLDINGS, INC.

                      Plaintiff,              **Civil Action No. 16-CV-00212**

      -against-

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA

                      Defendant.

-------------------------------------------------------------------X

---

### REPLY MEMORANDUM OF LAW BY TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

---

McElroy, Deutsch, Mulvaney
& Carpenter, LLP
Wall Street Plaza
88 Pine Street, 24th Floor
New York, New York 10005
T. (212) 483-9490
F. (212) 483-9209
*Attorneys for the Defendant,*
*Travelers Casualty and Surety Company*
*of America*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………..…………iii

REPLY POINT I:

TRAVELERS' EXHIBITS ARE PROPERLY BEFORE THE COURT………………..…………1

REPLY POINT II:

THE LATE NOTICE ISSUE IS RIPE FOR SUMMARY DETERMINATION………………………3

CONCLUSION………………………………………………………………………..10

## <u>TABLE OF AUTHORITIES</u>

*Am. Home Assur. Co. v. Republic Ins. Co.*,
984 F.2d 76 (2d Cir. 1993)…………………………………………………………………7

*American Surety Co. v. Pauly*,
170 U.S. 133 (1898)………………………………………………………………………...9-10

*Brass v. Am. Film Technologies, Inc.*,
987 F.2d 142 (2d Cir. 1993)………………………………………………………………1

*California Union Ins. Co. v. Am. Diversified Sav. Bank*,
948 F.2d 556 (9th Cir. 1991)……………………………………………………………...5

*Carione v. United States*,
368 F.Supp.2d 186 (E.D.N.Y. 2005)……………………………………………………...1

*Chicago Ins. Co. v. Halcond*,
49 F. Supp. 2d 312 (S.D.N.Y. 1999)……………………………..………………………7

*Christiania Gen. Ins. Corp. of NY v. Great Am. Ins. Co.*,
979 F.2d 268 (2d Cir. 1992)………………………………………………………………4

*Commodore Int'l, Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
184 A.D.2d 19, 591 N.Y.S.2d 168 (1992)………………………………………………...4

*Cortec Industries, Inc. v. Sum Holding L.P.*,
949 F.2d 42 (2d Cir. 1991)……………………………………………………………...1, 3

*Deso v. London & Lancashire Indem. Co. of Am.*,
3 N.Y.2d 127, 143 N.E.2d 889 (1957)……………………………………………....…7, 10

*Egan v. Marsh & McLennan Co. Inc.*,
2008 WL 245511 (S.D.N.Y. Jan. 30, 2008)……………………………….……………...1

*Evangelos Car Wash, Inc. v. Utica First Ins. Co.*,
45 A.D.3d 727, 845 N.Y.S.2d 458 (2d Dep't 2007)……………………………………...7, 10

*Gulf USA Corp v. Federal Insurance Co*,
259 F.3d 1044 (9th Cir. 2001)……………………………………………………...….8

*Harris v. Howard*,
2009 WL 3682537 (S.D.N.Y. Oct. 30, 2009)…………………………………….……..…3

*Heydt Contracting Corp. v. Am. Home Assur. Co.*,
146 A.D.2d 497, 536 N.Y.S.2d 770 (1st Dept. 1989)…………………………………10

*Jannazzo v. United States,*
2016 WL 1452392 (E.D.N.Y. Apr. 13, 2016)……………………………………….……….…1

*Kirkendall v. Halliburton, Inc.,*
707 F.3d 173 (2d Cir. 2013)…………………………………………………………………….1

*MBIA Inc. v. Certain Underwriters at Lloyd's, London,*
33 F.Supp.3d 344 (S.D.N.Y. 2014)………………………………………………………1, 2

*Minasian v. IDS Property Ins. Co.,*
2015 WL 8485257 (S.D.N.Y. Dec. 9, 2015)……………..………………………...…….5, 7, 8, 10

*Pfeffer v. Harleysville Grp., Inc.,*
2011 WL 6132693 (E.D.N.Y. Sept. 30, 2011),
*aff'd,* 502 F. App'x 28 (2d Cir. 2012)………………………………………………...…….6

*Rockland Exposition, Inc. v. Great Am. Assur. Co.,*
746 F. Supp. 2d 528 (S.D.N.Y. 2010),
*aff'd,* 445 F. App'x 387 (2d Cir. 2011)………………………………………………..4, 10

*Utica Mut. Ins. Co. v. Fireman's Fund Ins. Companies,*
748 F.2d 118 (2d Cir. 1984)………………………………………………………....…6, 9, 10

*Wall St. Discount Corp. v. Hartford Fire Ins. Co.,*
2004 WL 951074 (S.D.N.Y. May 4, 2004)………………………………..………………..4

Travelers Casualty and Surety Company of America ("Travelers"), respectfully submits this Reply Brief in further support of its Motion pursuant to Fed.R.Civ.Pro. 12(b)(6).

**REPLY POINT I**

**TRAVELERS' EXHIBITS ARE PROPERLY BEFORE THE COURT**

In adjudicating Rule 12(b)(6) motions, courts may consider any documents attached to the complaint as exhibits and those incorporated by reference in the complaint. Courts, may also consider matters of which judicial notice may be taken, and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Jannazzo v. United States,* 2016 WL 1452392, at 2 (E.D.N.Y. Apr. 13, 2016)[1]. Additionally, "Federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion." *Id.* at 9 (citing *Carione v. United States,* 368 F.Supp.2d 186, 191 (E.D.N.Y. 2005)). Further, "[a]t the motion to dismiss stage, where a plaintiff's 'factual allegations or legal conclusions are flatly contradicted by documentary evidence, they are not presumed to be true, or even accorded favorable inference[,]' in the context of a breach of contract action." *Egan v. Marsh & McLennan Co., Inc.*, 2008 WL 245511, at 2 (S.D.N.Y. Jan. 30, 2008); *see also, MBIA Inc. v. Certain Underwriters at Lloyd's, London,* 33 F.Supp.3d 344, 353 (S.D.N.Y. 2014) (holding, "[a]llegations in the complaint that are 'contradicted by…documentary evidence' are not entitled to presumption of truthfulness.") (citing *Kirkendall v. Halliburton, Inc.*, 707 F.3d 173 (2d Cir. 2013)).

In *Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42 (2d Cir. 1991), for example, the Second Circuit held that, "the problem that arises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff that they may be so considered;" and "it is for that reason – requiring notice so that the party against whom the

---

[1] *See also, Brass v. Am. Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir. 1993))

motion to dismiss is made may respond – that Rule 12(b)(6) motions are ordinarily converted into summary judgment motions." *Id.* at 48. However, "[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint[,] the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." *Id.* at 48. The Second Circuit held that because the plaintiff had undisputed notice of the documents referenced in the motion to dismiss, such documents were properly considered by the court without the need for converting the motion to one for summary judgment. *Id.* at 48.

Here, Travelers seeks dismissal of Plaintiff's complaint as a result of Plaintiff's failure (and inability) to state a claim due to Plaintiff's noncompliance with contractual conditions precedent to coverage and suit. *See, e.g., MBIA Inc.,* 33 F.Supp.3d at 356 (holding, "[w]hen there is a contractual condition that has not been met, the insured's claim against the insurer is barred[;]" and because plaintiff failed to satisfy a condition precedent, "it cannot assert a claim for breach of contract."). Specifically, Plaintiff failed to provide Travelers with timely notice of its alleged loss, as required by the Policy's express terms (discussed *infra*). In an effort to avoid (or delay) the consequences of its noncompliance with the conditions precedent, Plaintiff asks the Court to ignore certain of the Exhibits[2] annexed to Travelers' motion. The Exhibits, however, are documents of which Plaintiff had undisputed notice, were referenced in, and relied on by Plaintiff in framing its complaint, and that specifically contradict the allegations therein.

In furtherance to its breach of contract claim, Plaintiff must establish, *inter alia,* that it performed its own obligations under the contract. *MBIA Inc.,* 33 F.Supp.3d at 353. Plaintiff has conclusorily pled accordingly. (Cmp. ¶36). But its plea is contradicted by the allegations in its

---

[2] The Exhibits consist of: (1) Plaintiff's 2/10/15 Proof of Loss (Cmp. ¶¶27-28); (2) Plaintiff's 6/4/15 revised POL (Cmp. ¶29); (3) the 3/10/14 Police Report (Cmp. ¶18); (4) the NSCB's 12/16/14 Notice of Hearing (Cmp. ¶¶24-25); and (5) Travelers' 6/29/15 Dec. Ltr. (Cmp. ¶30).

complaint and the documentary evidence – of which Plaintiff had notice, referenced, and relied on in framing its complaint. Plaintiff alleges that it first received notice of the theft when a former RDC employee contacted its Vice President on March 1, 2014; and the V.P. then contacted two additional RDC employees (on March 1, 2014), who corroborated the first employee's statements. (Cmp. ¶¶17-18). The March 10, 2014 Police Report and the NSCB's Notice of Hearing – referenced and relied on in the complaint – further bear this out.

The Police Report (a public record subject to judicial notice[3]) indicates, *inter alia,* that Plaintiff's V.P., in response to phone calls with the three RDC employees (Cmp. ¶17), reviewed "paperwork and invoices and discovered fictitious invoices and external overcharges paid to RDC." (Ex. "D"). Additionally, the NSCB's Notice attaches a "Voluntary Statement" Exhibit, dated March 13, 2014, provided by Plaintiff's V.P. to the Las Vegas Police Department, which indicates that Plaintiff was notified on March 1, 2014 that RDC had identified specific invoices that had been falsified. (Ex. "E"). Despite its knowledge of facts which would cause a reasonable person to assume that a loss of a type covered by the Policy has been or will be incurred (the trigger for Plaintiff's obligation to notify Travelers), Plaintiff failed to provide Travelers with notice until February 1, 2015 (11 months later). According to the precedents cited above, the documentary evidence annexed to Travelers' motion should be considered – especially because Plaintiff had undisputed notice of the documents, which are referenced in, and relied upon in the complaint; and because they contradict the allegations and legal conclusions set forth therein.

## REPLY POINT II
### THE LATE NOTICE ISSUE IS RIPE FOR SUMMARY DETERMINATION

The Second Circuit in *Cortec Industries, Inc., supra*, held that, "[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents

---

[3] *Harris v. Howard*, No. 2009 WL 3682537, at 2 (S.D.N.Y. Oct. 30, 2009).

in framing the complaint[,] the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." Travelers submits that the Court need not recast Travelers' motion as one for summary judgment. Should the Court deem otherwise, the issue regarding Plaintiff's noncompliance with the Policy's notice requirement is clearly ripe for summary determination on the documentary evidence before the Court. The Policy's notice provision, in relevant part, provides:  "After you Discover a loss or a situation that may result in loss … that exceeds twenty-five percent (25%) of the Single Loss Retention, you must:  (a.) notify us as soon as possible[.]" (Ex. "A"). In addition, the Policy defines "discovery" as occurring when the insured's management "first become(s) aware of facts which would cause a reasonable person to assume that a loss of a type covered by this Crime Policy has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact details of loss may not then be known[.]" (*Id.*)

New York Courts, construing similar policy language, have held that, "discovery of a loss may occur even if an actual loss has not" (*Wall St. Discount Corp. v. Hartford Fire Ins. Co.,* 2004 WL 951074 (S.D.N.Y. May 4, 2004) (emphasis added)); and "[a] provision requiring notice when it 'appears likely' that a claim will or 'may' involve a policy does not require a probability – much less a certainty – that the policy at issue will be involved" (*Christiania Gen. Ins. Corp. of NY v. Great Am. Ins. Co.*, 979 F.2d 268, 276 (2d Cir. 1992)); and, "[a]ll that is required is a 'reasonable possibility' of such happening, based on an objective assessment of the information available." *Id.* at 276; *see also, Rockland Exposition, Inc. v. Great Am. Assur. Co.*, 746 F. Supp. 2d 528, 540 (S.D.N.Y. 2010), *aff'd,* 445 F. App'x 387 (2d Cir. 2011) (holding, "[w]here coverage is unclear, reasonable insurance-holders give notice."); *Commodore Int'l, Ltd.*

*v. Nat'l Union Fire Ins. Co. of Pitt., Pa.*, 184 A.D.2d 19, 21, 591 N.Y.S.2d 168 (1992) (holding,

"the time of discovery must be determined according to an objective test[.]").[4]

Contrary to Plaintiff's mischaracterization, New York courts have not hesitated to fix the

date upon which an insured was deemed to have "discovered" a loss as a matter of law. *See, e.g.,*

*Wall St., supra* (granting summary judgment, finding that insured had sufficient notice of alleged

fraudulent transactions to trigger the fidelity bond's "discovery" and notice provisions, <u>especially</u>

<u>since insured had reported the alleged fraud to the FBI one year before it provided notice to its</u>

<u>insurer</u>); *see also, Commodore, supra* (affirming summary judgment, holding insured's ongoing

investigation did <u>not</u> excuse insured's failure to provide timely notice); *Minasian v. IDS Property*

*Ins. Co.,* 2015 WL 8485257 (S.D.N.Y. Dec. 9, 2015) (granting summary judgment, finding

insured's failure to provide notice until 86 days after it reported the theft to the police constituted

late notice as a matter of law; and holding that, "<u>[u]nder New York law, plaintiffs adopted their</u>

<u>'wait and see approach' at their own risk</u>.").

Here, the documentary evidence establishes that Plaintiff was notified on March 1, 2014

by a former RDC employee that Vanderburgh had received fraudulent kickbacks on the RDC

Project (Ex. "D"; Cmp. ¶16). Plaintiff then questioned two additional RDC employees, who

corroborated the first employee's statements about the theft (Comp. ¶17). On March 10, 2014,

Plaintiff's V.P. reported the theft to the police, which resulted in the filing of the Police Report of

even date, indicating, *inter alia,* that Plaintiff had corroborated three RDC employees' statements

through his own investigation, and that he had "reviewed the paperwork and invoices and

discovered fictitious invoices and external overcharges paid to RDC." (Ex. "D"). On March 13,

2014, Plaintiff's V.P. filed a "Voluntary Statement" with the police, indicating that Plaintiff was

---

[4]*See also, e.g., California Union Ins. Co. v. Am. Diversified Sav. Bank*, 948 F.2d 556, 563 (9th
Cir. 1991) (holding "<u>the 'discovery threshold is low</u>) (emphasis added).

not only aware of the theft, but had also identified specific invoices that had been falsified to perpetrate the theft: "the invoices easily totaled over $300,000 and that RDC was doing this and making payments to BVD a company owned by our project manager Brian Vanderburgh"; "the invoices we were fighting from Top Notch specifically were falsified[.]" [Ex. "E" (p.80)].

In evaluating the time of "discovery," New York Courts apply an "objective test" – *i.e.,* "what the reasonable insured would conclude on the basis of the information available to it." *Commodore, supra* at 21l; *see also, Christiania*, *supra*. As the Policy language and the cases interpreting the same make abundantly clear, and which Plaintiff apparently misapprehends, the Policy's "discovery" and notice provisions do <u>not</u> require certainty or that a loss have actually occurred.[5] To the contrary, "[a]ll that is required is a '<u>reasonable possibility</u>' of such happening, based on an objective assessment of the information available." *Christiania, supra* at 276.

The purpose of the notice requirement is to "afford the insurer an opportunity to protect itself." *Pfeffer v. Harleysville Grp., Inc.*, 2011 WL 6132693, 4 (E.D.N.Y. Sept. 30, 2011), *aff'd,* 502 F.App'x 28 (2d Cir. 2012). Although fidelity insurers (*e.g.,* Travelers) is <u>not</u> obligated, under New York law, to establish prejudice in order to deny coverage due to late notice,[6] where, the insured fails to comply with its notice obligation, "it deprives the insurer of the opportunity to investigate the claim, exposes the insurer to the possibility of fraud, impedes the insurer's ability to speak with witnesses and inspect the damages, and increases the risk of the insurer lacking a sufficient reserve fund." *Id.* at 4 (citing *Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co.*, 748 F.2d

---

[5] The 8/18/14 email referenced on page 21 of Plaintiff's brief indicates that Det. O'Connell was not able to confirm Vanderburgh's involvement at that time. Plaintiff argues that its duty to notify Travelers was, therefore, not triggered (until 12/14/14) because, until that time, it lacked certainty regarding Vanderburgh's role in the theft. Plaintiff's argument lacks merit; because its notice obligations under the Policy do <u>not</u> require certainty that a loss had actually occurred.
[6] *See, e.g., Pfeffer, supra* at 3; see *also,* Travelers' 3/16/16 Brief, pp. 7-8.

118 (2d Cir. 1984); *see also, Minasian, supra* at 8 (holding, "[t]hose cases did not enforce strict timing requirements simply to promote form over function.").

Plaintiff's admissions in its pleading – *e.g.*, that Plaintiff received information from <u>three</u> former RDC employees regarding the Vanderburgh theft as of March 1, 2014 (*i.e.,* 9 days before it charged him with theft in a report to the police, but 338 days before it notified Travelers) – indisputably establish that irrespective of whether it had <u>confirmed</u> its actual loss in March 2014, Plaintiff had certainly discovered a "situation that may result in loss" by that time. Plaintiff thereafter charged Vanderburgh with fraud and theft in its reports to the police on March 10, 2014 and again on March 13, 2014 (*i.e.,* 329 and 326 days, respectively, before it notified Travelers), wherein Plaintiff disclosed its knowledge regarding particular details of the theft, and identified documents that were falsified in furtherance of the theft. Despite obtaining three witness statements, conducting its own investigation, and then charging Vanderburgh with criminal conduct, Plaintiff nevertheless persisted in a "wait and see approach," some eleven (11) months before it notified Travelers of even "a situation which may result in a loss."

Such delay is unreasonable as a matter of law. *See, e.g., Minasian; Commodore.; Wall St., supra; see also, Am. Home Assur. Co. v. Republic Ins. Co.*, 984 F.2d 76 (2d Cir. 1993) (36 day delay untimely); *Chicago Ins. Co. v. Halcond*, 49 F. Supp. 2d 312 (S.D.N.Y. 1999) (36 day delay untimely); *Deso v. London & Lancashire Indem. Co. of Am.*, 3 N.Y.2d 127, 131, 143 N.E.2d 889 (1957) (51 days); *Evangelos Car Wash, Inc. v. Utica First Ins. Co.*, 45 A.D.3d 727, 727, 845 N.Y.S.2d 458 (2d Dep't 2007) (105 days); *Power Auth.*, *supra* (53 days).

Even if the Court were willing to overlook the contradictory documentary evidence; and to ignore the Policy's express discovery and notice provisions; and to disregard the objective discovery standard embodied in the cases cited above, Plaintiff's notice would <u>still be untimely</u>

as a matter of law. Plaintiff contends [incorrectly] that it did not obtain "sufficient knowledge" to report the loss to Travelers until December 14, 2014 – *i.e.,* after the NSCB's Notice of Hearing was served (Cmp. ¶25). Plaintiff also admits that even after it received confirmation from the NSCB, it still sat on that "sufficient knowledge" for another fifty (50) days until it *finally* provided Travelers with first notice of the claimed loss on February 3, 2015.[7] Thus, even according Plaintiff the benefit of its insupportable argument, its delay in giving notice was still untimely as a matter of New York law. *See, e.g., Minasian, Am. Home Assur. Co.,* (36 day delay untimely); *Chicago Ins. Co.,* (36 day delay untimely).

Plaintiff devotes a considerable amount of its brief to an analysis of the Ninth Circuit's decision in *Gulf U.S.A. Corp v. Federal Ins. Co.,* 259 F.3d 1049 (9th Cir. 2001), a case that disproves Plaintiff's principal argument in the mater at bar. In *Gulf,* the court repeatedly identifies the signal-point at which it can no longer be disputed that the insured has discovered a loss, or a situation that may give rise to a loss: "when a person <u>charges</u> another with committing fraud or an act of dishonesty." *Id.* at 1059. Until that point, it may be reasonable to permit an employer to be cautious before asserting to its insurer that a fraud or dishonesty has occurred. *Id.* This is because "such charges … may often set into motion further investigation by responsible government agencies" (*Id.)* – something that Plaintiff here deliberately undertook to do, eleven months prior to notifying Travelers. The Ninth Circuit excused *Gulf*'s President from giving notice to its insurer when the evidence did "not establish that [he] had knowledge of sufficient facts to charge that the [transactions] involved a theft loss." *Id.* at 1060. However, in the instant matter, Plaintiff's V.P. did not hesitate after completing his investigation to charge Vanderburgh

---

[7] Importantly, within 9 days after the Plaintiff provided notice and proof of loss, Travelers reserved its rights and defenses, including, specifically, its late notice defense. Thereafter, Travelers issued its declination letter 25 days after it received the 6/4/15 Revised Proof of Loss.

with theft and dishonesty when he reported Vanderburgh's dishonest conduct to the Las Vegas Police Department. As such, unlike *Gulf,* it is not "unclear when [Plaintiff] possessed knowledge of the existence of facts that would justify charging [Vanderburgh] with dishonesty, fraud or theft [*Id.* at 1060]." Here, the critical facts sufficient to charge Vanderburgh with fraudulent acts were known and relied upon by Plaintiff in reporting it to the police in March of 2014.

Thus, Plaintiff cannot make the argument relied upon by the insured in *Utica Mutual, supra,* that it failed to notify its insurer because it "maintained a good faith and reasonable belief in is employee's honesty." *Utica Mutual,* 748 F.2d at 121. The Plaintiff had long since charged Vanderburgh with stealing hundreds of thousands of dollars, falsifying invoices, and bid padding in a conspiracy with Plaintiff's general contractor. Plaintiff's indisputable actions in March 2014 preclude it from contending now that there is any material issue of fact relating to its understanding of the facts reported to the police. When charging Vanderburgh with criminal and dishonest conduct in March 2014, Plaintiff was undoubtedly [and objectively] aware of "a situation that may result in loss", but did not provide notice to its insurer until eleven months later. Plaintiff cannot plead the facts necessary to establish that it timely performed its fundamental notice obligation, and, concomitantly breached a condition precedent to coverage.

Plaintiff's repeated citation to *American Surety Co. v. Pauly*, 170 U.S. 133 (1898) is also inapposite. In that case, Pauly, the Receiver for a bank that went into receivership in 1891 made a claim under the plaintiff's fidelity bond, which required the obligee to provide notice to the surety of dishonest acts by an employee "as soon as practicable after the occurrence of such act shall have come to the knowledge of the employer." *Id.* at 162. In declining the claim, the surety relied, *inter alia*, upon "evidence tending to show that … the receiver had reason, in the months of January, February, March, or April, 1892, to believe that there were irregularities on the part

of Collins, as president of the bank." The Supreme Court held, however, that Pauly did not become aware of any specific acts of dishonesty by Collins until a bookkeeper informed Pauly, a few days prior to May 23, 1892, that he had discovered false entries in the bank's books that reflected dishonest transactions he attributed to Collins. *Id.* at 163.  Accordingly, the Supreme Court held that by giving notice to the surety on May 23, 1892 – "a few days after" a bank employee brought Collins' false entries to the his attention – Receiver Pauly had provided timely notice to the surety of the bank's loss. *Id.*

Here, one of RDC's former employees brought Vanderburgh's thefts to Plaintiff's V.P.'s attention on March 1, 2014, and two others corroborated Vanderburgh's dishonest acts that same day. The V.P. investigated, and on March 10, 2014, he discovered fictitious invoices and overcharges that he attributed to Vanderburgh. "A few days later" Plaintiff reported Vanderburgh to the police. If, in March 2014, Plaintiff had also given notice of "a situation that may result in a loss" to Travelers, Plaintiff's repeated citations to *Pauly* might make sense. But, in fact, the Receiver's timely performance of the Bank's notice obligation to American Surety "a few days after" an employee brought Collins' dishonest acts to the Receiver's attention, stands in such stark contrast to Plaintiff's eleven month delay in giving any notice to Travelers, that the *Pauly* precedent actually supports dismissal of Plaintiff's complaint herein.[8]

## CONCLUSION

Pursuant to the foregoing, Travelers requests that the Court enter an Order dismissing Plaintiff's Complaint with prejudice.

McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
/s/ Adam R. Schwartz

May 5, 2016                    Adam R. Schwartz

---

[8] *See*, *Wall St., Christiania, Rockland, Commodore, Minasian, supra; see also, Am. Home Assur. Co., Chicago Ins. Co., Deso, Evangelos, Utica First, Heydt Contracting, supra.*

10